## Caley *et al. versus* Hoopes.

1. H. sold a farm to C. for $10,000, of which $2500 were to remain on mort-gage. The balance of the consideration consisted of two judgments, one for $4500, which was to be entered up, and another of $3000, which was not to be entered. In this latter, D., who was a responsible party, was joined with C. H. transferred the $4500 judgment to B., and agreed to become security for its payment. At the instance of H., C. insured the barn on the premises and assigned the policy to H. as "collateral security for the payment of money loaned on the property therein insured." H. paid the premiums on the policy. The barn was destroyed by fire, and the proceeds of the policy having been paid to H., C. claimed that he should apply them to the $3000 judgment. *Held,* that the assignment of the policy was intended as a secu-rity for the $4500 judgment; that the liability of H. to B. was an insurable interest, and that the claim of C. could not be sustained.

2. A written instrument under seal, and free from ambiguity, cannot be affected by a conversation of the parties thereto, which occurred nearly two months prior to its execution.

March 26th 1878. Before SHARSWOOD, MERCUR, GORDON, PAX-SON, WOODWARD and TRUNKEY, JJ.   AGNEW, C. J., absent.

Error to the Court of Common Pleas of *Delaware county:* Of January Term 1878, No. 128.

Cyrus Hoopes, on March 2d 1875, entered judgment against William R. Caley and John Conner, on their bond and warrant, dated March 29th 1874, conditioned for the payment of $3000. The defendants obtained a rule to open this judgment, which the court made absolute. The plaintiff then filed a declaration, and the defendants pleaded payment, with leave, &c.

It appeared that Hoopes sold to Caley a farm, in Chester county, and conveyed the same to him on March 27th 1874, for a consider-ation of $10,000. Caley assumed a mortgage on the property for $2500, and gave two bonds with warrants of attorney to Hoopes for the value of the purchase-money. One of these bonds was for $4500, and the other for $3000. In the latter John Conner, who owned property in Delaware county, was joined. The judgment-

[Caley *v.* Hoopes.]

bond for $4500, was to be entered up in Chester county, but it was the understanding that the $3000 bond should not be entered anywhere. Hoopes assigned the $4500 judgment to his sister, Mrs. Bailey, becoming security for its payment. In June, Caley had the barn and its contents insured for $3400, $2500 being allowed to the barn and $900 to the contents. This policy was assigned by Caley to Hoopes without the knowledge of Conner. The assignment was as follows:—

"For a valuable consideration I assign to Cyrus Hoopes, of West Marlborough township, all my interest and claim to the within policy of insurance, as collateral security for the payment of money loaned on property therein insured. Witness my hand and seal the second day of July, A. D. 1874.

WM. R. CALEY. [L. S.]

Witness present,
    JENNIE B. KIRK.
Approved 7 mo. 9, 1874.        C. H. BRADLEY, Sec."

Hoopes paid the premiums on this policy, and it appeared that it was procured at his instance. Caley testified that "Hoopes wished to hold this policy over Conner and me," and that Hoopes had said, "I am not going to enter the Conner bond, I wish to have it to hold against you and Conner." On the 11th of September, the barn and its contents were destroyed by fire, and on the 19th of the same month, Hoopes entered judgment on the $3000 bond and warrant in Chester county. After the fire the following notice was sent to Hoopes:—

"September 21, 1874.

To CYRUS HOOPES:
    Whereas I, William R. Caley, assigned to you a certain policy of insurance upon property conveyed by you to me in this county, as collateral to secure the payment of a certain bond given to you by us, William R. Caley and John Conner for $3000, dated the 27th day of March, A. D. 1874; now you are hereby notified not to assign, transfer or in any way part with the said policy of insurance, as we shall require the proceeds thereof to be applied to the payment of the above-stated bond.

Signed,        WILLIAM R. CALEY.
                JOHN CONNER."

On December 16th, Hoopes received the proceeds of the policy and gave to Caley $900 for the contents of the barn, paid to Mrs. Bailey $1500, and retained $1000 himself. On March 2d 1875, the $3000 judgment-bond was entered up in Delaware county, and on April 2d 1875, execution issued thereon. On the 17th of the same month the court granted the rule to open the judgment, which was made absolute and an issue directed to try how much if any-

[Caley v. Hoopes.]

thing was due on said judgment. At the trial, the foregoing facts were disclosed, and then defendants offered to show why Hoopes retained the $1000, and also, that Conner was the security of Caley on the $3000 bond; both of which offers the court, Clayton, P. J., rejected. There was other evidence tending to show that it was so retained for the purpose of rebuilding the barn. The defendants submitted the following points, to which are subjoined the answers of the court :—

1. The only judgment held by the plaintiff at the time of the transfer was the one in controversy. Hence the transfer, if good at all, was as collateral security for that judgment alone.

Ans. "Refused."

2. The only connection the plaintiff had with the judgment held by Mary H. Bailey was that he had become security for its payment. The transfer might have been made to cover this risk by appropriate language approved by the company; but the language used is not sufficient for that purpose.

Ans. "I decline to charge as requested. It might be good law in a suit between the insurance company and Caley, but as between Hoopes and Caley it has no application."

3. The plaintiff's contract of suretyship was a personal one which Mrs. Bailey might recover upon by suit; but it was in no sense an insurable interest in the property insured, nor a loan of money upon that property, therefore it was neither within the spirit nor letter of the transfer.

Ans. "The first sentence is affirmed. I decline to say that the $4500 was not a loan of money upon the property mentioned in the policy; as between these parties it was so considered."

4. The assignment of the policy is not an appropriation of the money which might become due by reason of fire. Caley had the right to direct its appropriation at any time before its receipt by the plaintiff, bound only by the terms of the transfer to appropriate it to some debt due to the plaintiff.

Ans. "Refused."

5. Caley having appropriated the money to the payment of the judgment in controversy, before its receipt by the plaintiff and giving him notice of it, the plaintiff is bound by that appropriation.

Ans. "He had appropriated the money when he made the assignment as collateral security for money loaned on the farm. I construe the assignment as collateral security for money loaned on the farm. If the $3000 was not to be secured on the farm it was not included in the assignment."

In their general charge, the court said : "Mr. Hoopes conveyed the farm and took the $4500 judgment, which he entered against the property sold. He afterwards accepted Conner as security for the remaining $3000, and did not enter it against the property sold. He afterwards procured a policy of insurance for $3400;

[Caley *v.* Hoopes.]

$900 of which was to be for Caley's benefit, the balance to be as collateral security for money loaned on the premises. My construction of this assignment is, that it was to secure the $4500 judgment; that the parties considered that sum *loaned* upon the premises sold, and the $3000 as a separate and independent security; and that the proceeds of the policy after the fire were to be apportioned: first, $900 to Caley for the contents of the barn; the balance to be applied to the $4500 judgment; and that accordingly your verdict ought to be for the plaintiff for the face of the judgment; and you should also find what sum is now due upon it."

*J. M. Broomall* and *W. B. Waddell,* for plaintiff in error.—Hoopes's judgment was not a specific lien, and he had no insurable interest: Grevemeyer *v.* Ins. Co., 12 P. F. Smith 340. Nor was the policy assigned to him as security for his suretyship on the judgment assigned to Mrs. Bailey. He was not, therefore, entitled to retain any portion of the proceeds of the policy.

*V. Gilpin Robinson* and *Charles N. Pennypacker,* for defendants in error.—The case of Grevemeyer *v.* Insurance Co. does not apply. That was a contest between a judgment creditor of the insurer and the insurance company; this is a controversy between the obligors in a bond and the obligee, as to in what manner the obligee shall appropriate the proceeds paid by the company. Has Conner a right to dictate the appropriation of the $3400? The $3000 bond was an independent, separate obligation, having nothing to do with the premises insured. The $4500 bond was a lien upon such premises. The words used in the assignment create a suretyship on the part of Hoopes: Allen *v.* Hubert, 13 Wright 259. The policy of insurance was a contract of indemnity, and was assigned to Hoopes to secure " money loaned on the premises," for the payment of which Hoopes was bound: Smith *v.* Columbia Ins. Co., 5 Harris 253.

Mr. Justice PAXSON delivered the opinion of the court, May 6th 1878.

We are of opinion that the learned judge of the court below was right in his construction of the assignment of the policy of insurance. It was under seal and expressly stated to be " as collateral security for the payment of money loaned on the property therein insured." It was free from ambiguity. Had Cyrus Hoopes, the assignee of the policy, money loaned on the property insured? Upon this point there is no conflict of testimony. He had sold a farm to Caley, the insured, for $7500, subject to a mortgage of $2500, no part of the purchase-money of which has been paid. In order to secure it he took a judgment for $4500, which he entered up, and which was a second lien upon the property. There was

[Caley v. Hoopes.]

still $3000 due. For this he took a judgment bond from Caley with John Conner as security. Conner owned a farm in Delaware county, and this bond was not entered, and it was agreed that it should not be. This, however, is not material; it was clearly not a loan upon the farm purchased by Caley, but was a loan upon the credit of Conner, and was not protected by the terms of the assignment of the policy. In fact Conner did not know of the existence of the insurance until after the fire. The policy was obtained at the instance of Hoopes, the judgment creditor, and the premium was paid by him. Subsequently he procured an assignment of it to himself. It seems incredible that he should have done all this for the benefit of Conner. There was abundant reason why he should desire to protect his $4500 judgment. With the destruction of the buildings by fire and with a prior mortgage of $2500 upon the property, a portion of his money at least would have been in peril. The bond of Conner was good; there was no reason to apprehend loss in that quarter.

There was no evidence to contradict the assignment beyond a vague conversation between Hoopes and Caley, alleged to have taken place in May, in which Hoopes (according to Caley's testimony), said: " He wished to hold it (the policy) as collateral over Conner and me. He said I am not going to enter the Conner bond, I wish to have it to hold against you and Conner." This, if true, amounts to nothing, aside from any question of its competency. At most it was but a scintilla. Had the conversation occurred at the time of the assignment, it would have been entitled to more weight, but it is utterly worthless to affect a written instrument under seal, free from ambiguity, and executed nearly two months afterwards. Nor was this evidence entirely inconsistent with the terms of the assignment. Caley gets the full benefit of the insurance-money directly. Conner gets the benefit of it indirectly by the application of a portion to the payment of a prior lien, the rebuilding of the barn, and the increased ability of his principal debtor to pay by the receipt of the $900 for the contents of the barn.

The fact that Hoopes had assigned the $4500 judgment to his sister does not affect the question. He was responsible to her for the money, and had an interest to protect. His sister, on the contrary, was protected by his guarantee.

The important assignments of error have been disposed of in this brief discussion. It remains to notice one or two matters of detail. We see no error in rejecting the evidence that Conner was Caley's security on the $3000 bond. It was not pertinent to any issue before the jury. Nor are we able to perceive that the exclusion of the question in regard to the $1000 retained for the purpose of rebuilding the barn, worked any injury to the plaintiffs in error. The question appears to have been answered and not subsequently ruled out. But if otherwise it is manifest the $1000 was in the

5 NORRIS—32

[*Caley v. Hoopes.*]

hands of Hoopes for the purpose of rebuilding Caley's barn, and no point was made below that it should be applied either by way of payment or set off in this suit.

Judgment affirmed.